UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SEANN PATRICK PIETILA,

    Defendant.

_____/

Hon. Robert J. Jonker

Case No. 1:23-cr-78

**ORDER ON MOTION FOR DETENTION**

This matter is before the Court on the Government's Motion for Detention (ECF No. 3). Defendant appeared before this Court on June 22, 2023, for a bond hearing. The Court ordered briefing from the parties regarding three issues: 1) whether the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" applies to "a crime of violence" in 18 U.S.C. §3142(f)(1)(A); 2) whether the Court can consider danger to the community if the government is not entitled to a detention hearing under Section 3142(f)(1) but is entitled to a hearing under Section 3142(f)(2); and 3) whether the Court may consider suicidal ideation or risk of suicide in making its bond determination. The Government submitted its brief on June 28, 2023 (No. 1:23-mj-278, ECF No. 12), and Defendant submitted his brief on June 29, 2023 (ECF No 17).

On June 27, 2023, the grand jury returned an indictment against Defendant. (ECF No. 12.) The indictment charges two counts of Interstate Threatening Communications and one count of a Threat to Kill or Injure by Means of Fire. The inclusion of the latter charge, which carries a maximum period of incarceration of 10 years, raises the question of whether it entitles the United States to request a detention hearing under Section 3142(f)(1).

**1. Entitlement to a Hearing**

The Bail Reform Act of 1984 ("Bail Reform Act"), as amended, states:

"The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—

(1) upon motion of the attorney for the Government, in a case that involves—

(A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
. . .

(2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
(A) a serious risk that such person will flee;
. . . .

18 U.S.C. § 3142(f)(1)(A), (f)(2)(A). "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987) (citing availability of detention hearings if case involves "crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders").

In this case (at least as it stood as of the hearing), the government was only entitled to request detention under 18 U.S.C. § 3142(f)(1) if the Complaint's charge of Interstate Threatening Communications is categorically a crime of violence as defined by that section. Defendant has conceded that the charge is categorically a crime of violence. (ECF No. 68, PageID.68.) The Court agrees.

A charge of Interstate Threatening Communications in violation of 18 U.S.C. § 875(c) qualifies as a "crime of violence" under Section 3156(a)(4)(A) of the Act if it has among its elements the threatened use of physical force against another person. The elements of a Section

875(c) violation are (1) the defendant knowingly transmitted a communication in interstate or foreign commerce; (2) the communication contained a threat to a particular person or group; and (3) the defendant transmitted the communication for the purpose of making a threat or knowing that the communication would be viewed as a threat. *United States v. Howard*, 947 F.3d 936, 946 (6th Cir. 2020); Sixth Cir. JI 18.01; *see also United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019) (citing *Elonis v. United States*, 135 S. Ct. 2001, 2008-12 (2015)). Multiple federal courts have held that these elements include the threatened use of physical force, sufficient to qualify a Section 875(c) violation as a "crime of violence" under the Bail Reform Act's elements clause. *See United States v. Santoro*, 359 F. Supp. 3d 122, 127 (D. Me. 2019); *United States v. Christy*, No. 3:18-CR-223, 2020 WL 2794617, at *3 n.5 (M.D. Pa. May 29, 2020); *United States v. Kane*, No. 3:20-mj-5054 TLF, 2020 WL 1660058, at *2 (W.D. Wash. Apr. 3, 2020).

Defendant argues, however, that Section 3142(f)(1) only includes crimes of violence for which the maximum term of imprisonment is 10 years or more. The Court disagrees. The Bail Reform Act is certainly not a model of clarity. However, based on the reasoning set out in *United States v. Santoro*, 359 F. Supp. 3d 122, 124-25 (D. Me. 2019), and the Supreme Court's statutory interpretation decision in *Lockhart v. United States,* 577 U.S. 347 (2016), the "10 years or more" limitation must apply only to offenses listed in Section 2332b(g)(5)(B). First, *Lockhart* suggests the Court apply the general rule that where there is a series of items, a modifier applies only to the item directly before it. 577 U.S. at 351. Second, as the *Santoro* court noted, the alternative interpretative canon applying the modifier to the entire list cannot apply because one of the items in the list, violations of Section 1591, contains no offenses with penalties less than 10 years in prison (unlike the two other categories of cases). 359 F. Supp. 3d at 125.

3

The legislative history and context of the statute also suggest that Congress intended that the United States could request a hearing based on danger to the community where the charge involved any crime of violence. Section 3142(f)(1)(A), as originally enacted in 1984, provided for a detention hearing upon motion of the government in a case that involves "a crime of violence" without any limitation as to the possible sentence for the offense. *See* Pub. L. 98-473 (HJRes 648), 98 Stat 1837 (Oct. 12, 1984). Section 3142(f)(1)(A) was amended by the Intelligence Reform and Terrorism Prevention Act of 2004 to ensure the pretrial detention of terrorists and provide a presumption for pretrial detention in cases involving terrorism. *See* Pub. L. 108-458 (S. 2845), 118 Stat 3638 (Dec. 17, 2004). Specifically, in Section 6952 of that legislation, Congress inserted: "', or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed' after 'violence'." *Id.* Additionally, Congress added the phrase: "or an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed" after the words "or 2332b of this title," in section 3142(e)(3)(C). The inclusion of the limiting phrase in both subsections of the Bail Reform Act evinces an intent to apply the "10 years or more" restriction only to the list of offenses in Section 2332b(g)(5)(B). In 2008, Congress added the third category of cases, violations of 18 U.S.C. § 1591 (sex trafficking of children by force, fraud, or coercion), between "a crime of violence" and the reference to section 2332b(g)(5)(B). *See* Pub. L. 110-457(HR 7311), 122 Stat 5044 (Dec. 23, 2008). That insertion was included in Section 224 of the legislation entitled "Bail Conditions, Subpoenas, and Repeat Offender Penalties for Sex Trafficking."[1] Additionally, the

---

[1] Section 1591, which was first enacted in 2000 and amended seven times, has never included any offenses for which the maximum term of imprisonment was less than 10 years. By comparison, the list of offenses in section 2332b(g)(5)(B) include crimes for which the maximum possible punishment is less than 10 years in prison, including misdemeanors. *See, e.g.*, 18 U.S.C. § 1361

4

Bail Reform Act references a "crime of violence" without a sentencing limitation elsewhere in the statute, which further demonstrates that Congress did not intend to apply the limiting clause to crimes of violence. *See* Sections 3142(f)(1)(E) and (g)(1). As *Santoro* found, nothing in the amendments to Section 3142(f)(1)(A) or usage of the term elsewhere in the statute reflects an intent to narrow the crimes of violence category in Section 3142(f)(1)(A). 359 F. Supp. 3d at 125.

Defendant argues that the Court should apply the "series-qualified canon" rule of statutory construction, citing *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). However, in that case, the Supreme Court held that a modifier after a comma modified both of the verbs before the comma. *Id.* at 1169. It specifically noted that the comma was important to demonstrate that the modifying phrase applied to all of the antecedents before the comma. *Id.* at 1170. For this analysis to work here, there would have to be a comma between "2332b(g)(5)(B)" and "for." While the rule of the last antecedent is certainly not absolute, the legislative history and context dictate the Court should apply it here.

Defendant argues that where there is ambiguity, the rule of lenity should dictate that the Court further restrict the statute. But as the preceding analysis demonstrates, the statute is not sufficiently ambiguous to require application of that rule. Defendant also notes that there are some judicial decisions that have held that the 10-year imprisonment requirement modifies "crime of violence." *See, e.g.*, *United States v. Persico*, No. 10-CR-147, 2017 WL 3669554 (E.D.N.Y. 2017) (citing *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009)); *United States v. Baldazo*, No. 2:11-CR-77, 2012 WL 12947283 (N.D. Ind. 2012); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (E.D. Wis. 2008); *but see United States v. Rausch*, 746 F. Supp. 2d 1192,

---

(punishable, in some circumstances, by up to one year in prison); 18 U.S.C. § 32(c) (punishable by up to five years in prison).

1194 & n.1 (D. Colo. 2010); *United States v. Barlow*, 2009 WL 799655, at *1 (D. Utah Mar. 24, 2009). However, they offer little reasoning to support that analysis and are therefore not persuasive.

A grand jury has now returned an indictment charging Threat to Kill or Injure by Means of Fire contrary to 18 U.S.C. § 844(e), which is punishable by up to 10 years in prison. The government argues that the Section 844(e) charge is a crime of violence because it has as an element the threatened use of physical force against another person. It cites *United States v. Williams*, 690 F.3d 1056, 1069 (8th Cir. 2012); and *United States v. Flannery*, 103 F. App'x 919, 920 (8th Cir. 2004). However, neither of those cases engage in the categorical approach in their determination that this section qualifies as a crime of violence. Defendant points out that the statute may be violated if a defendant "maliciously conveys false information knowing the same to be false" concerning an attempt to kill, injure, or intimidate an individual or to unlawfully damage certain property by fire or an explosive.

Because I interpret the statute such that a crime of violence need not be punishable by a term of at least 10 years to qualify under Section 3142(f)(1), I do not rely on the charge under 18 U.S.C. § 844(e) to allow a hearing on the government's motion for detention. I also do not reach the question of whether there has been a sufficient showing for a hearing based on Section 3142(f)(2).

2. **Detention Determination**

Under the Bail Reform Act, I must release a defendant on bond unless I find (1) by a preponderance of the evidence that he or she is a risk of flight or nonappearance; or (2) by clear and convincing evidence that he or she is a danger to the community. I am required to consider the least restrictive condition or combination of conditions that reasonably assure the defendant's

6

appearance and protect the community. I have considered each of the possible conditions set out in 18 U.S.C. § 3142(c)(1)(A).

In determining whether there are sufficient conditions to reasonably assure the defendant's appearance and the safety of the community, I am required to consider a number of factors. Those are (1) the nature and circumstances of offense charged, including whether it is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release.[2]

Upon review of the motion and related filings, the motion (ECF No. 3) is granted. While I find that there are conditions that I could impose that would reasonably assure Defendant's appearance, I find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.

Defendant Pietila is 19 years old and a native of the Upper Peninsula, where he has lived most of his life. He recently lived with his mother in Lansing for about three years and returned to Pickford in June 2023. He has no criminal history, is unemployed, and relies on his immediate family for financial support. Defendant stated that he is in excellent physical health and has no medical problems. There is no report of substance abuse. He was diagnosed with depression at age 14 and has attended outpatient mental health counseling after expressing suicidal ideation. He does not take medication. His mother testified that he is developmentally disabled due to missing some tissue in his brain and unable to care for himself. But her testimony regarding his disability is

---

[2] The Bail Reform Act requires the Court to consider all of these factors regardless of whether the government has moved for detention based on Section 3142(f)(1) or (2). While a motion under Section 3142(f)(1) is appropriate here, even if the hearing were held only based on the Court's own motion due to risk of nonappearance, the structure of the Bail Reform Act requires me to consider each of these factors.

somewhat at odds with the evidence in this case, including her testimony that he was a caregiver for his younger sister, as well as his extensive use of the internet, particularly social media. The defense did not raise competency as an issue during the bond hearing.

Defendant is charged with making threatening communications in which he discussed plans to commit a mass murder targeted at Jewish people. He notes that he "won't be taken alive[;] I'll make sure of that. Remember 'Heil Hitler!' boom red mist." (ECF No. 1-1, PageID.8.) He talks about streaming video of the murder "on discord for people, so they could screen record and send it to others or post it online." (*Id.*, PageID.9.) He discusses specific plans for what firearms he would need, how he would research the location, and bringing napalm to burn bodies. (PageID.22-25.) When confronted by law enforcement, he admitted he sent those messages. He had a list in his phone of the items he would need to carry out his attack and identified a target synagogue and date. That list was created in February 2023 and originally listed a date of March 15, 2023, but the date was changed to March 15, 2024. He had access to three firearms, a 40 cal. Pistol, a .22 cal. rifle, and a shotgun, as well as knives and an axe. While the evidence of dangerousness is the factor to be given the least weight, it is a heavy consideration here.

Defendant argues he should be released to the home that he has shared with his parents. His mother testified that they would be glad to have him in their home. However, Defendant is alleged to have committed the charged crimes while living with his mother in Lansing. She testified she recently found a Nazi flag in his room and swastikas carved into his dresser. While she said she was not happy about it and would require him to refinish his dresser, she made no more inquiry into this literal red flag. Tasking her with acting as his third party custodian would not provide any surety that he would not be able to accomplish his goals.

Defendant argues that, because he does not have a driver's license, passport, or a bank account and would be willing to wear a location monitoring device while living in a more remote area of Michigan's Upper Peninsula without internet, he would not be a flight risk or a danger to the community. The defense reasonably questions whether Defendant is capable of a plan as elaborate as what he discussed. But the testimony and exhibits paint a picture of a very disturbed young man struggling after the loss of an online romantic relationship who repeatedly discusses having nothing to live for and wanting to murder others and take his own life. While the plot he proposed in his messages may be beyond his ability, it is not a difficult task to find a gun and kill others before killing oneself.[3] Tethers are easily cut, and guns are not difficult to find. I find that there is clear and convincing evidence that Defendant is a danger to the community, and no condition or combination of conditions that I could apply would reasonably protect the community.

Accordingly, IT IS ORDERED that defendant is committed to the custody of the Attorney General pending trial.

DONE AND ORDERED on July 3, 2023.

    /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

---

[3] The parties do not agree as to whether the Court may consider a defendant's suicidal ideation in terms of it rendering him a risk of nonappearance or a danger to himself, and therefore the community. However, there can be no question that the Court may consider it in the context of expressed plans to kill others before taking his own life.