UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

  Plaintiff,          Case no. 1:23-cr-78

v.                Hon. Robert J. Jonker
                 United States District Judge
SEANN PATRICK PIETILA

  Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE

On March 4, 2024, Seann Patrick Pietila will stand before this Honorable Court to be sentenced for transmitting a threatening communication in interstate or foreign commerce in violation of 18 U.S.C. § 875(c). Mr. Pietila has received the Presentence Investigation Report (PSR) and met with counsel to discuss it. (ECF No. 40; PageID.423). Mr. Pietila has one outstanding objection to the PSR. He is requesting a sentence below his advisory sentencing guideline range and concurs with the presentence writer's analysis in paragraph 82 of the PSR.

As the Court is aware, the principle and basic mandate of 18 U.S.C. § 3553(a) requires this Honorable Court to impose a sentencing "sufficient, but not greater than necessary" to comply with the four (4) purposes in § 3553(a)(2):

**§ 3553. Imposition of a sentence.**

**(a)**  **Factors to be considered in imposition of a sentence.** – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…

18 U.S.C. § 3553(a)(2).

In *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker*, 543 U.S. 220 (2005), a judge must impose the lowest sentence that is "minimally sufficient" to meet those goals regardless if that sentence is probation, time served, a mandatory minimum sentence, the statutory maximum, or somewhere between.

Seann Patrick Pietila is 20-years-old and has no prior criminal history. Mr. Pietila has pleaded guilty and expressed remorse for this offense. He is sorry for committing this offense and apologizes to the victims. He detailed his offense conduct and remorse to the presentence report writer. Mr. Pietila has no prior arrests, convictions, or allegations of other criminal conduct. He has zero criminal history points and is in criminal history category I. He was not a disciplinary problem in school or at home.

Mr. Pietila has a supportive family. Four character letters are being submitted on his behalf. The letters describe someone who is a good brother, son, and grandson. They state that Mr. Pietila has struggled throughout his life, yet is kind, and has not had the normal experiences of someone his age.

Mr. Pietila grew up in a military family. His grandfather was in the Navy. His mother and stepfather have 30 years of combined military experience. His mother served ten years in the United States Army National Guard. She was a chemical, biological, radiological, and nuclear specialist. His stepfather served active duty in Iran and Afghanistan for six years. For 14 more years he served with the National Guard. The family collected military paraphernalia with his mother having a collection of gas masks from around the world. They were also involved in training the military and had a lot of training manuals from throughout the years in their home. (ECF No 28, PageID.197-198, Attachment 1, Letters). This coupled with growing up in the rural Upper Peninsula gave Mr. Pietila an interest in hunting and target shooting. He was taught how to safely handle guns at an early age.

On June 16, 2023, Mr. Pietila was arrested, and his home was searched. He immediately cooperated with the FBI by waiving his right to remain silent, signing a waiver of his rights, and answering all the FBI's questions for two hours. (ECF No. 28, PageID.149). He answered questions and provided information until law enforcement ended the interview. *Id.* Mr. Pietila admitted to being Instagram user finnishv64 and sending the messages with the account to _this_aint_me_88. (ECF No. 28, PageID.139-41). He provided consent to search his phone, laptop, and provided the pin code for his phone. (ECF No. 28, PageID.149-50). Mr. Pietila never asked for an attorney, was polite, and truthful. The agents complimented him several times during the interview for being honest. (ECF No. 28, PageID.165). He told agents about himself, his family, and his friends. He told the agents about his online posts regarding Nazis and other topics. He told the agents how he met "Liam" and what they discussed. In addition to the chats, Mr. Pietila admitted writing notes on his phone, including

one about the Shaarey Zedek Congregation and a separate suicide note that was written at the time of the offense.

Mr. Pietila's messages with Liam were private. (ECF No. 28, PageID.154). The threats that comprise the offense conduct were sent only to Liam. Mr. Pietila described a note to Liam, but never sent him the note regarding the Shaarey Zedek Congregation. (ECF No. 28, PageID.166). He never referred specifically to the Congregation in his messages to Liam. He never sent the note to anyone or posted it in a public forum.

Mr. Pietila's and Liam's messages were also about their personal lives and some of the struggles that they shared. They reflect two teenagers who did not have any friends and felt isolated. (ECF No. 28, PageID.159). Liam talked about being bullied at school. (ECF No. 1-1, PageID.11). He said that Mr. Pietila was his only friend. *Id.* Mr. Pietila said that his experience at school was similar. (ECF No. 1-1, PageID.12). Many of Mr. Pietila's messages were about his online girlfriend, whom he had considered his girlfriend since February 14, 2023. The messages reflected the difficulties that he perceived in his relationship with her. Both the note regarding the Shaarey Zedek Congregation and the suicide note also referred to her. Mr. Pietila considered his online relationship significant, despite never meeting her in-person, knowing her last name, or having her direct contact information. When he believed that they broke up, Mr. Pietila spiraled emotionally and considered suicide.

Mr. Pietila has not had the typical life experiences of someone his age. In 2020, he moved to Lansing when he was sixteen years old during the COVID-19 pandemic. Mr. Pietila's mother thought that move would be good for her son and that he would be able to meet people. (ECF No. 28, PageID.198). However, he never actually attended school in-person because of COVID-19. *Id.* He also never received the IEP that he was supposed to

receive. *Id.* at PageID.198-99. He did not meet goals that he and his family had set for him, such as graduating high school and getting his driver's license.

While legally an adult, Mr. Pietila is totally reliant on his family. Mr. Pietila does not have a driver's license. (ECF No. 28, PageID.154). Mr. Pietila does not have a state identification card or social security card. (ECF No. 28, PageID.200). He does not have a bank account. *Id.* He relies on his mother and stepfather for all financial support. *Id.* He can reheat food, such as microwaving leftovers, but he is mainly reliant on his mother and stepfather to feed him. (ECF No. 42, PageID.453). At times, he needs to be prompted to brush his teeth and change his clothes. *Id.* Mr. Pietila's only work history was for one summer when he was 15 years old and worked with his biological father. (ECF No. 28, PageID.201). He does not know his own social security number or his address. (ECF No. 28, PageID.212).

Mr. Pietila was born at 27 weeks gestation and spent 48 days in the NICU. (ECF No. 28, PageID.195). Mr. Pietila was born without his septum pellucidum, a membrane in the brain that separates the anterior horns of the left and right lateral ventricles (fluid-filled cavities to protect and support) in the brain. (ECF No. 42, PageID.457). Clinically, those born without a septum pellucidum are at increased [risk] for several conditions which can result in developmental and intellectual delays, as well as behavioral problems, mood disorders, seizures, vision difficulties, low muscle tone, hormonal problems, and jaundice at birth, several of which apply to Mr. Pietila. *Id.*

Mr. Pietila's mom said that throughout his life he has struggled with "cognitive abilities, reading comprehension, math, the ability to articulate his feelings correctly, struggles with maintaining friendships, struggles with maintaining relationships, with really anybody. He has kind of been by himself." (ECF No. 28, PageID.196).

On top of his cognitive issues, Mr. Pietila has struggled with mental health issues of depression and anxiety throughout much of his life. This has led to a history of suicidal ideation, which included a hospital visit when he was 14. He is small in size and stature due to his developmental delays, which have led to a history of bullying and social isolation.

Mr. Pietila's mother recognized that he has struggled with mental health for years and she has had to bring him to the hospital several times for suicidal ideations. (ECF No. 28, PageID.203). He was in counseling for a long time and, according to his mother, seeing a psychologist one to two times per week. (ECF No. 28, PageID.228). When they moved to Lansing, they could not find a mental health care provider who would take a new patient during the COVID-19 pandemic. *Id.* They were waiting until they moved back up to Pickford to get him back into his therapist there. *Id.* In Lansing, Mr. Pietila's mother said that he would stay in his room "24/7." *Id.* at PageID.204. He was afraid of the "city life" and was afraid to go to the grocery store, even with his mother. *Id.* At the time of the offense, Mr. Pietila would spend all day in his room playing video games on the internet. (ECF No. 28, PageID.211).

Counsel retained Dr. Christopher Baker from Pine Rest Christian Mental Health Services to prepare a Forensic Psychological Assessment Report. The report has been provided to the government, presentence report writer, and filed with the Court. Dr. Baker concluded:

> Mr. Pietila demonstrates adequate and sufficient abilities as it relates to his understanding, reasoning, and appreciation of his legal situation from a competency standpoint. However, this is not to suggest that Mr. Pietila's abilities are perfect in this regard. While he very likely understands his charges and legal situation at an intellectual level, there appears to be a substantial gap in his appreciation for the larger implications of his circumstances resulting from his words and communications. This is believed to reflect deeply flawed social and emotional development at an individual level. Mr. Pietila is believed to function, in many

respects, with a child-like mindset in which words, images, symbols, and the like do not carry gravity or weight beyond the very immediate and short-sighted context in which he expresses them. His explanations for why he is less likely to be found guilty or less likely to serve a similar sentence compared to others in similar legal situations reflects an immature and impaired ability to adopt alternative perspectives other than his own. Mr. Pietila's impairments in social cognition and naivete are likely reflections of a highly circumscribed developmental trajectory that reflects both neurodevelopmental and environmental factors. Mr. Pietila appears highly suggestible and does not fully recognize how one's actions and words, including his own, would be understood or appreciated by others with a different life experience. His worldview is egocentric and more consistent from a developmental standpoint with that of a younger child, in which behaviors and actions are driven primarily by their immediate rewards or gratifications. In Mr. Pietila's case, this appears to reflect a desire for acceptance and inclusion by any peer group, with the vehicle (e.g., anti-Semitic beliefs) for that acceptance largely incidental from his perspective. This likely reflects Mr. Pietila's impaired recognition of any broader, more meaningful implications that his words and actions carry in the eyes of others. His difficulty with appreciating his current legal circumstances is not a reflection of his cognitive functioning, which as noted falls within expected limits, but is instead more likely related to Mr. Pietila's disrupted social development and education. While these limitations and impairments do not rise to a level that competency is fundamentally impaired from a legal perspective, they might help to explain some of Mr. Pietila's obvious limitations in his appreciation of his current charges and legal situation. (ECF No. 42, PageID.464-65).

However, Mr. Pietila has been learning from this experience. He has been in custody since June 16, 2023. Mr. Pietila has been separated from his family and understands the stress that it has caused. He could not assist his grandfather this summer or see his younger sister. His family's home was damaged when the FBI executed the search warrant. Mr. Pietila apologizes to the victims of his offense and for the harm he caused. Mr. Pietila understands that his words have meaning, his messages were harmful, and that there are consequences for his actions. Mr. Pietila remains optimistic about his future. He wants to pursue the goals that he had previously set for himself, including obtaining identification, a social security card, a GED, a driver's license, and a job. He will have the support of his family to help him accomplish those goals. (*See* Attachment 1, Letters).

Mr. Pietila is requesting a mental health evaluation and treatment. He is requesting any available educational and vocational programming while in custody and on supervised release.

We ask this Honorable Court to consider all of these factors when fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

**Outstanding Objection**

Mr. Pietila objects to the imposition of the six-level offense characteristic under USSG § 2A6.1(b)(1). He does not object to the relevant facts in the PSR.

**The Guideline reads:**

**§ 2A6.1. Threatening or Harassing Communications; Hoaxes; False Liens**
**(a)** Base Offense Level:
**(1)** 12; or
**(2)** 6, if the defendant is convicted of an offense under 47 U.S.C. § 223(a)(1) (C), (D), or (E) that did not involve a threat to injure a person or property.
**(b)** Specific Offense Characteristics
**(1)** If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels.

The pivotal inquiry when determining the appropriateness of a § 2A6.1(b)(1) enhancement is whether the defendant intended to carry out the threat, and the likelihood that he would actually do so. *United States v. Gary*, 18 F.3d 1123, 1127–28 (4th Cir.1994) (holding that any acts that evidence an intent to carry out the threats may form the basis for a § 2A6.1(b)(1) enhancement). Essential to determining whether to apply the six-point enhancement is a finding that a nexus exists between the defendant's conduct and the threats that form the basis of the indictment. See *United States v. Taylor*, 88 F.3d 938, 942 (11th Cir.1996) (concluding that the essential inquiry under § 2A6.1(b)(1) is "whether the facts of the case, taken as a whole, establish a sufficiently direct connection between the

defendant's ... conduct and his threat").

The Court may consider the tone of the threats in conjunction with Mr. Pietila's other overt conduct. *United States v. Newell,* 309 F.3d 396, 403 (6th Cir. 2002). Here, ownership of the firearms was not tied to the threat. *Id.* at 402. Mr. Pietila made the threat while in the lower peninsula. (PSR, ¶ 11). Mr. Pietila did not have a driver's license or know how to drive. He did not have a bank account or money to buy firearms or other materials. The only firearm that was in his home in Lansing was in a lockbox with a padlock on the outside and belonged to his mother. (ECF No. 28, PageID.213). The other firearms owned by his family were in Pickford, in the Upper Peninsula. *Id.*

Mr. Pietila's overt conduct weighs against application of the specific offense characteristic. The note regarding Shaarey Zedek Congregation was not shared with Liam or anyone else. (ECF No. 28, PageID.166). The note is dated March 2024 and appears to end with a message to Mr. Pietila's online girlfriend. That note lists several weapons, but Mr. Pietila only had access to one of those weapons, a 12-gauge shotgun, which was in Pickford, Michigan, and was a family heirloom.[1] Mr. Pietila never fired the shotgun. (ECF No. 28, PageID.165). The shotgun hadn't been fired in 25 years, because Mr. Pietila's stepfather's father killed himself with it. (ECF No. 28, PageID.206). The family refurbished it and put it above a door, because "it seemed like the right thing to do." *Id.*

Mr. Pietila wrote a suicide note on his phone that was contemporaneous with the offense conduct. He wrote a suicide note that envisioned a solitary suicide at the river

---

[1] He owned at least one Stag airsoft gun, which was also in Pickford, Michigan. (ECF No. 28, PageID.207, 222). The airsoft guns were not seized by the FBI. (ECF No. 28, PageID.164).

behind the family's home in Pickford and using the same shotgun that his stepfather's father used. The note did not mention harming anyone else and does not appear to be in conjunction with Mr. Pietila's messages with Liam or the note regarding Shaarey Zedek Congregation. The note was created on June 2, 2023 at 1:12 a.m., and modified on June 4, 2023 at 3:17 a.m.:

> Suicide note Todays my last day fellas. I just can't take this shit anymore. I fucking hate this world and generation. I try so hard to make things work but they never do. I get way to attached just for the person I love to leave. But hey it's my fault anyway, maybe if I wasn't actually a piece of shit things would be different. I love you all, thanks for making my life just that little bit better. Don't cry though, maybe in the next life we can all meet again. Hope you all find someone who will stay with you for life. Good bye. Anyone who wants to find me I'm out back by the river. 12 gauge shotgun though so don't actually come look. it'll be gross. Don't wanna scar y'all for life lol. Call the cops or something. 💀 Take care of the pups for me! And Raelynn if you're seeing this. I'm sorry, I loves you lots. Please do not cry. I will watch over you to make sure you're alright. Have a good life sweetie. And if you need anything I'm sure Colt (Cleetis) can help you out. Just check my followers on insta. Make sure you ask for oinky and a sweat shirt! Hey I'm off to bed. Have a goodnight and sweet dreams Rae!! If you need anything at all I'll be here. I'll try to goto the store tomorrow too. So I can get you some stuff. Steam gift card you said?

Mr. Pietila made several claims in his internet conversations that were not true. For example, he talked about working many hours, when in reality he had no job. He discussed that he had a cache of weapons buried around his home property, when in reality there were no weapons, no cache, and no ability for him to purchase weapons. Mr. Pietila's overt conduct does not meet the threshold for application of this specific offense characteristic.

If the court sustained Mr. Pietila's objection, the total offense level would be reduced by 6 levels. This would equate to a criminal history category of I and a total offense level of 14, for a guideline range of 15 to 21 months.

**Downward Variance**

Mr. Pietila requests the Court vary downward from the advisory sentencing guideline range based upon the factors in his sentencing memorandum, the attached letters, and Dr. Baker's forensic report. As recognized by probation, the advisory guidelines do not consider the unique facts and circumstances of his case. Mr. Pietila has no prior arrests or convictions and no other pending cases. He has cognitive and mental health issues that with the proper treatment can be managed. He has a supportive family. He has cooperated with the police and authorities throughout the process. He pleaded guilty and accepted responsibility and has great remorse for his actions. No matter what custody sentence is ordered, he will be under court supervision for some time to help ensure that he will get the treatment help he needs. He is deterred from further criminal behavior and intends to remain law-abiding.

For all these reasons, Mr. Pietila respectfully requests that the Court vary downward from the advisory sentencing guideline range.

**Conclusion**

Seann Patrick Pietila prays this Honorable Court sentence him sufficiently, but not greater than necessary, to achieve the goals of sentencing. He thanks the Court for its time in considering his circumstances and this case.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated: February 20, 2024

/s/ Sean R. Tilton
SEAN R. TILTON
Assistant Federal Public Defender
50 Louis, NW, Suite 300
Grand Rapids, MI 49503

(616) 742-7420

Dated: February 20, 2024        /s/ Elizabeth A. LaCosse
ELIZABETH A. LaCOSSE
Assistant Federal Public Defender
Office of the Federal Defender
925 W. Washington Street, Suite 104
Marquette, Michigan 49855
906-226-3050