UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

      Plaintiff,                                  Case no. 1:23-cr-78

v.                                                    Hon. Robert J. Jonker
                                                        United States District Judge

SEANN PATRICK PIETILA,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO GOVERNMENT'S RESTITUTION MEMORANDUM

On March 4, 2024, Seann Patrick Pietila will stand before this Honorable Court to be sentenced for transmitting a threatening communication in interstate or foreign commerce in violation of 18 U.S.C. § 875(c). He provides this response to the government's restitution memorandum.

### Background Information

On June 16, 2023, Mr. Pietila was arrested, and his home was searched. He immediately cooperated with the FBI by waiving his right to remain silent, signing a waiver of his rights, and answering all the FBI's questions for two hours. (ECF No. 28, PageID.149). He consented to the search of his phone and computer. (ECF No. 28, PageID.149-50). He told the agents how he met "Liam" and what they discussed. In addition to the chats, Mr. Pietila admitted writing notes on his phone, including one about the Shaarey Zedek Congregation and a separate suicide note written at the time of the offense.

On that day, the FBI manually searched Mr. Pietila's phone and discovered the notes and did a forensic extraction of the phone using Cellebrite software.  The following day, June 17, 2023, the FBI created a pdf report of the phone.   On June 13, 2023, the government had also received 210 pages of user information from Mr. Pietila's Instagram account, which included the chats with Liam.  (ECF No. 1-1, PageID.6).

The Shaarey Zedek Congregation note identified a date of March 15, 2024.  It included a list of weapons.  When the government searched Mr. Pietila's home, only one of the listed weapons was seized, which was a family heirloom and not purchased in relation to the note.  During the bond hearing, the Court heard testimony from Mr. Pietila's mother that he did not have any of his own money, bank accounts, rarely left his room, and was even afraid to go to the grocery store in Lansing without her.  (ECF No. 28, PageID.204-5).

Mr. Pietila's messages with Liam were private.  (ECF No. 28, PageID.154).  The threats that comprise the offense conduct were sent only to Liam.  The offense of conviction does not name the Shaarey Zedek Congregation.  Mr. Pietila described a note to Liam, but never sent him the note regarding the Shaarey Zedek Congregation.  (ECF No. 28, PageID.166).  He never referred specifically to the Congregation in his messages to Liam.  He never sent the note to anyone or posted it in a public forum.

Mr. Pietila has remained in custody since being arrested on June 16, 2023.  (ECF No. 18, PageID.84).  He has not been a management problem at the Newaygo County Jail.  There are no allegations he has attempted to contact any members of the Shaarey Zedek Congregation.

At the time of Mr. Pietila's preliminary hearing and bond hearing, New Zealand authorities had issued an arrest warrant for Liam or he had been arrested. (ECF No. 28, PageID.151).

The Shaarey Zedek Congregation note became public through two avenues. On June 16, 2023, the government filed a complaint alleging that Mr. Pietila transmitted in interstate or foreign commerce any communication containing any threat to kidnap or any threat to injure the person of another. (ECF No. 1-1, PageID.1-44). The complaint contained an unredacted photograph of the note. (ECF No. 1-1, PageID.43). The complaint did not allege that the note itself was an interstate threat. *Id.*

On the same day, the United States Attorney's Office for the Western District of Michigan issued a press release about the case with an unredacted photograph of the note.[1] Local and national news outlets picked up the story, reposted the photograph, and attributed it to the United States Attorney's Office.[2] In its restitution memorandum, the government implies that Mr. Pietila's contested preliminary and bond hearings contributed to the note being disseminated, however, it had been widely shared prior to those hearings.

On June 27, 2023, Mr. Pietila was indicted. The note was not included in the alleged offense conduct or charged as its own offense. On November 13, 2023, Mr. Pietila pleaded guilty. The note and the Shaarey Zedek Congregation were not referenced in the plea agreement. (ECF No. 32, PageID.386-94). The plea agreement does not reference restitution as a possible penalty for the offense. *Id.* The government's penalty sheet also

---

[1] https://www.justice.gov/usao-wdmi/pr/2023_0616_Seann_Pietila (Accessed February 29, 2024).
[2] FBI arrests Michigan man suspected of planning mass shooting at synagogue - mlive.com; Feds: Man with East Lansing ties may have been targeting synagogue for mass shooting (lansingstatejournal.com); FBI arrests 19-year-old in U.P. for alleged mass killing plans (fox17online.com) (Accessed February 29, 2024).

3

does not reference restitution as a possible penalty for the offense. (ECF No.13, PageID.62).

On February 28, 2024, the government filed its restitution memorandum and included a request for restitution of $14,475.15. The government has not provided any information about the Shaarey Zedek Congregation's security costs prior to Mr. Pietila's arrest.

## Argument

The government has requested the defendant be responsible for $14,475.15 under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (MVRA), for the cost associated with the Congregation hiring armed guards for security. The government's request should be denied because the security costs are consequential damages and not compensable by the MVRA.

"The MVRA requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses." *United States v. McNeil*, 744 F. App'x 941, 943 (6th Cir. 2018) (citing *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000)). To be compensable under MVRA, the harm must come within one of the four categories enumerated in § 3663A(b). *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014). The Second Circuit reasoned,

> Because courts have no inherent authority to order restitution, Congress must provide the authority. Congress did so through the MVRA but chose to include only the four categories of harms listed in § 3663A(b). If Congress intended to include all harms directly and proximately caused by a defendant's offense, it could have done so with wording more simple and categorical. Applying the rule of statutory construction 'inclusio unius est exclusio alterius'—that to express or include one

4

Case 1:23-cr-00078-RJJ   ECF No. 50,   PageID.548   Filed 03/02/24   Page 5 of 8

thing implies the exclusion of the other—it follows that Congress intended to limit the restitutable harms covered by the MVRA.

*Maynard*, 743 F.3d at 379 (internal citation and quotation marks omitted).

Moreover, MVRA includes only those losses that are directly and proximately caused by defendant's criminal conduct. *McNeil*, 744 F. App'x at 943 (quoting *United States v. Fowler*, 819 F.3d 298, 307 (6th Cir. 2016)). "The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010) (internal citations and internal quotation marks omitted). This "requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked." *Id*. at 352. "[T]he mere fact that an injury is related to a crime is insufficient for restitution; there must be a 'direct and proximate' connection between the two to support an award." *In re Doe*, 264 F.App'x 260, 263 (4th Cir. 2007). Courts agree that consequential damages are not authorized under MVRA. *United States v. Barton*, 366 F.3d 1160, 1167 (10th Cir. 2004) (noting that "there is general agreement that a restitution order under the MVRA cannot encompass consequential damages resulting from the defendant's conduct" and citing cases in support); *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003)(same); *see also United States v. Bogart*, 490 F. Supp. 2d 885, 894 (S.D. Ohio 2007) (agreeing with the majority of Circuits that consequential damages cannot be included in a restitution order). "Consequential damages are 'losses that do not flow directly and immediately from an injurious act but that result indirectly from the act.'" *Bogart*, 490 F.Supp.2d at 894

(citing Black's Law Dictionary (8th ed. 2004); *Rain &* Hail *Ins. Service, Inc. v. Federal Crop Ins*. Corp., 426 F.3d 976, 980-81 (8th Cir. 2005)).

Several courts addressed the issue whether cost of security guard is compensable under the MVRA. The Second Circuit held in *Maynard* that cost of security guard bank hired after bank robbery is not compensable under the MVRA because it does not fall within any of the four categories enumerated in the MVRA. *Id*. at 380-81.

The same result was reached in *United States v. Wright*, 176 F. App'x 373, 375 (4th Cir. 2006). In that case, district court ordered restitution for, among other things, the costs of security personnel hired after a burglary of several stores. On appeal, the government concurred with the defendant that these expenses were "consequential damages that are not properly included in the restitution order." *Id*. The Fourth Circuit accepted that concession.

In *United States v. McNeil*, 744 F. App'x 941 (6th Cir. 2018), the case the government primarily relies on, the Sixth Circuit affirmed the order of restitution for the cost of security. However, that case is distinguishable. In *McNeil*, the defendant pledged support to the Islamic State of Iraq and the Levant on several social media accounts and posted personal information, including names and addresses, of about 100 military men and women and encouraged others to kill and harm those individuals. *Id.* at 942. Defendant was ordered to pay restitution to cover home security expenses incurred by five victims. *Id.* at 942-43.

*McNeil* is distinguishable for two reasons. First, *McNeil* did not address the issue present here—whether cost of security is compensable under the MVRA. Instead, the issue was, first, whether defendant was required to pay for expenses victims incurred before his

6

offense, and second, whether the district court failed to consider the factors set forth by the *Supreme Court in Paroline v. United States*, 572 U.S. 464, 134 S.Ct. 1710 (2014), when ordering restitution. *McNeil*, 744 F. App'x at 944.  Thus, since the precise issue raised here is neither raised nor discussed in *McNeil*, that case does not govern. *See Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S.Ct. 1710 (1993) (stating that if a decision does not "squarely address[ ] [an] issue," a court remains "free to address the issue on the merits" in a subsequent case).

Second, *McNeil* is distinguishable on its facts. In *McNeil*, there was an ongoing threat even after defendant was arrested because defendant posted victims' information on social media and encouraged others to harm them.  In the instant case, unlike in *McNeil*, the note was not posted in any public forum.  It was never sent to Liam or anyone else.  The note was not part of the offense of conviction.  It was not included in the indictment or the plea agreement and there was no reference to the Congregation in the indictment or plea agreement.  The note referred to a date nine months in the future.  It was contained on a password-protected phone and not shared with anyone.  At the time of his arrest, Mr. Pietila consented to the search of his electronic devices and made a truthful statement.  The government immediately conducted manual and forensic searches of the phone.  The government also had received Mr. Pietila's Instagram records.  The threat in *McNeil* was ongoing after the defendant's arrest because his threats were essentially a public call to arms.  The situation here is different with regards to the Shaarey Zedek Congregation, where the note was not shared, but was maintained privately on a password protected phone.  The government has acknowledged that there is no evidence that Mr. Pietila

7

specifically encouraged others to kill or injure members of the Shaarey Zedek Congregation. (ECF No. 49, PageID.534). When Mr. Pietila was arrested, any threat from the note itself ceased.

Similarly, the instant case is distinguishable from *United States v. Ruiz-Lopez,* where the defendant brought a loaded handgun into a convenience store, handling it in a reckless fashion and having "taken steps to make it capable of discharging a bullet." *United States v. Ruiz-Lopez*, 53 F.4th 400, 404–05 (6th Cir. 2022). Mr. Pietila did not post the note in public in a reckless fashion. He maintained it in a password protected place where no one else had access to it.

Mr. Pietila believes that the Court should hold that the cost of the armed guards are consequential damages and are also not covered by the plain language of the MVRA. The government's request for restitution should be denied.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated: March 2, 2024         /s/ Sean R. Tilton
SEAN R. TILTON
Assistant Federal Public Defender
50 Louis, NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

Dated: March 2, 2024         /s/ Elizabeth A. LaCosse
ELIZABETH A. LaCOSSE
Assistant Federal Public Defender
925 W. Washington Street, Suite 104
Marquette, Michigan 49855
906-226-3050